# EXHIBIT 1

**Pages 1 - 20**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Judge

```
EDWARD WESTERMAN,             )
                              )
          Plaintiff,          )
                              )
  VS.                         )      NO. 3:24-CV-04118-JCS
                              )
FTI CONSULTING, INC., and FTI,)
LLC,                          )
                              )
          Defendants.         )
_____)
```

                          San Francisco, California
                          Wednesday, September 25, 2024

**TRANSCRIPT OF REMOTE ZOOM PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:
        COOLEY, LLP
        3 Embarcadero Center, 20th Floor
        San Francisco, CA 94111
   **BY: JOHN H. HEMANN**
       **ATTORNEY AT LAW**

For Defendants:
        PAUL HASTINGS, LLP
        515 South Flower Street, Twenty-Fifth Floor
        Los Angeles, CA 90071
   **BY: ELENA R. BACA**
       **CHRIS A. JALIAN**
       **ATTORNEYS AT LAW**

REPORTED REMOTELY BY:  Stephen W. Franklin, RMR, CRR, CPE
                     Official United States Reporter

|    |                                                                                     |
|----|-------------------------------------------------------------------------------------|
| 1  | **Wednesday - September 25, 2024**                            **9:32 a.m.**        |
| 2  | **P R O C E E D I N G S**                                                           |
| 3  | ---o0o---                                                                           |
| 4  | **THE COURTROOM DEPUTY:** We are calling Case                                       |
| 5  | Number 24-CV-4118, Westerman versus FTI Consulting.  Counsel,                       |
| 6  | could you please raise your hands.  Thank you.                                      |
| 7  | Good morning.  Appearances, please, starting with the                               |
| 8  | plaintiff and then the defendant.                                                   |
| 9  | **MR. HEMANN:** Good morning, Your Honor.  John Hemann                              |
| 10 | from Cooley on behalf of Mr. Westerman.                                             |
| 11 | **THE COURT:** Good morning.                                                        |
| 12 | You're muted, Mr. Jalian.                                                           |
| 13 | **MR. JALIAN:** Good morning, Your Honor.  Chris Jalian                             |
| 14 | on behalf of FTI.                                                                   |
| 15 | **THE COURT:** So are you sitting near another?                                     |
| 16 | **MS. BACA:** We are, Your Honor.  We have one                                      |
| 17 | microphone.                                                                         |
| 18 | **THE COURT:** Okay.  Good.  Just so there's no echo.                               |
| 19 | Go ahead, I'm sorry.                                                                |
| 20 | **MS. BACA:** Elena Baca, B-a-c-a, Paul Hastings, on                                |
| 21 | behalf of FTI, seated next to Mr. Jalian with one mic.                              |
| 22 | **THE COURT:** Nice.  Thank you all.                                                |
| 23 | So you've done this show before.  I don't come out very                             |
| 24 | much different than Judge Corley on the discovery angle, but I                      |
| 25 | have a series of questions.  I'll give you a tentative on the                       |

1  motion to dismiss.  I have a question about the motion to
2  dismiss, and then I'll tell you what I'm thinking about for
3  discovery, which probably telegraphs my thinking on the motion
4  to dismiss.
5       The parties in their briefing did not distinguish for
6  purposes of a motion to dismiss between FTI Consulting, Inc.,
7  and FTI consulting, LLC.  I will assume, should I not, that
8  there is no distinction for purposes of the motion to dismiss
9  for jurisdiction and venue between those two companies.  Is
10 that right?
11          **MR. HEMANN:**  Yes, Your Honor.
12          **MS. BACA:**  Yes, Your Honor.
13          **THE COURT:**  Okay.  Everyone agrees to that.
14      On the Westerman, when he changed his tax jurisdiction
15 there was some, what I think was a typo.  He asked to change it
16 retroactive to 2020, not 2016.
17      Is that right?
18          **MR. HEMANN:**  That is correct, Your Honor, based on
19 the e-mail that I think that we're all looking for.  He and his
20 family moved to change their residency in 2016, and it appears
21 as if FTI treated him as a full-time California tax resident
22 through 2020, when there was a request to change the -- the
23 Wyoming part of the -- of the tax treatments, while
24 maintaining, you know, days that he worked in California, the
25 record shows, he --

1           **THE COURT:**  That's a separate question.  Separate
2    question.
3           **MR. HEMANN:**  Okay.
4           **THE COURT:**  So the -- but from 2020 forward, in
5    your -- you believe the record reflects the -- his tax
6    jurisdiction, leaving apart whether you pay taxes on California
7    work in California.
8           **MR. HEMANN:**  Right.
9           **THE COURT:**  It was changed to Wyoming, is that right,
10   2020 forward?
11          **MR. HEMANN:**  I would have to check that nuance of the
12   question.  I -- as to whether the permanent, sort of his - I
13   believe that he took the position that his tax residency for
14   his personal income taxes changed in 2016, but I would have to
15   check on that.
16          **THE COURT:**  Well, I don't know.  The question is what
17   the company did.  That's my question.  And it looks like -- the
18   question was raised not because of the work that he did in
19   California or the work when he was physically in California or
20   physically in Wyoming.
21          **MR. HEMANN:**  Right.
22          **THE COURT:**  Because those, you pay taxes in those
23   respective states in terms of income taxes.  But for
24   compensation that wasn't assigned from a physical location,
25   like leave, paid leave.

1          **MR. HEMANN:**  Sure.

2          **THE COURT:**  It sounds like that's how it arose.

3      And my question is whether or not, for the purposes for

4  which it would be relevant, which would be a limited number of

5  purposes, the company changed his tax jurisdiction retroactive

6  to 2020 to Wyoming, and from that day forward it was Wyoming.

7  It's a new -- it's a tiny little piece, and it has almost no

8  relevance, but I wanted to pin it down.

9          **MR. HEMANN:**  I don't know beyond what's in the e-mail

10 that Mr. Lu attached, what the company did internally on that.

11         **THE COURT:**  Fine; maybe I'll ask the company.

12         **MS. BACA:**  So, Your Honor, correct.  At paragraph 10

13 of Mr. Lu's declaration, Exhibit A attaches the e-mail that

14 we're referring to.  Docket document 10-1, at page 3 you'll

15 find the reference there.  And it's correct, the request was

16 made and it was retro.  If you look at the e-mail exchanges, it

17 is retro to 2020.

18         **THE COURT:**  And that was done.  So thereafter if he

19 was paid some ...

20         **MS. BACA:**  Correct.

21      (Reporter clarification.)

22         **THE COURT:**  I think we're going to need to get the

23 microphone closer to whoever's actually speaking.

24      And I take it there's also no dispute that after -- even

25 after that change in tax jurisdiction, he continued to have an

1  office in San Francisco that he used from time to time.
2              **MR. HEMANN:**  I don't believe there's any dispute as
3  to that, Your Honor.  And it was alleged in the -- in the
4  complaint, set forth in the declaration and not refuted.
5              **THE COURT:**  Ms. Baca, do you --
6              **MR. JALIAN:**  Your Honor, this is Chris Jalian for
7  defendants.  He spent some portion of his time in California
8  working out of our California offices.
9              **THE COURT:**  And he had an office assigned there,
10 right?  During that period of time.  Is that correct,
11 Mr. Jalian?
12             **MR. JALIAN:**  I believe he did, Your Honor.  I don't
13 know the specifics of the assignment, but he was -- he did work
14 from there.
15             **THE COURT:**  Okay.  Yeah, I mean, he says he was
16 assigned an office in San Francisco in his declaration.  You
17 don't dispute that.
18             **MR. JALIAN:**  No, Your Honor, we did not dispute that.
19             **THE COURT:**  Okay.  A nit, but it is no -- there's no
20 dispute that Secretariat is a competitor of FTI, and that by
21 working there, to the extent it's enforceable, FT' -- Westerman
22 was violating Section 12 of the 2019 employment agreement, if
23 it's enforceable.
24        Do you agree with that, Mr. Hemann?
25             **MR. HEMANN:**  I agree that that's the position that

1  FTI takes, and that's the position that they've taken in the DC
2  litigation.
3             **THE COURT:**  Okay.  I didn't ask that question.  I
4  asked whether you agree that that is correct, that if it's
5  enforceable, he violated it.
6             **MR. HEMANN:**  If it is enforceable, he would be in
7  viol' -- he would be in violation of it, yes.
8             **THE COURT:**  Because FTI is a competitor, right?
9             **MR. HEMANN:**  FTI is a competitor of Secretariat, yes.
10            **THE COURT:**  Gotcha.
11       What's the status of the motion to dismiss in the DC
12  action?
13            **MR. HEMANN:**  Fully briefed and pending.  We have not
14  gotten a -- an oral argument date in DC.  We don't know whether
15  we'll be getting one or not, but fully briefed.
16            **THE COURT:**  What's the usual path to a decision on
17  those in that jurisdiction?
18            **MR. HEMANN:**  I'm told by my DC Cooley colleagues that
19  it is usually some months before a decision is made as to
20  whether there will be a hearing, and that there is not always a
21  hearing.
22            **THE COURT:**  Okay.  All right.
23            **MR. HEMANN:**  I don't know whether Ms. Baca and
24  Mr. Jalian have different information, but there's not a --
25  there's not the sort of general presumption towards a hearing

1   that we have.
2          **MR. JALIAN:**  That's consistent with our
3   understanding, Your Honor.  Fully briefed; no hearing set yet.
4          **THE COURT:**  Okay.  So I guess I don't know if I want
5   to go down that particular rathole.
6       So here's what I'm thinking about.  I think that on the
7   motion to dismiss, my general question for you is even if we
8   proceed today and I deny the motion to dismiss, the parties get
9   to relitigate it again at summary judgment or a later stage of
10  this case.  Right?  I mean, this is on a motion to dismiss.
11  There's a certain record before the Court, but not the complete
12  record that the parties will have when they're done with
13  discovery.  It's a -- and I understand how that this is a good
14  time to raise it, but it's not the end of the story.
15      Right?
16      Mr. Hemann, you agree with that, right?
17         **MR. HEMANN:**  I agree with that.
18         **THE COURT:**  Okay.  So here's what I think.
19      I don't think that it's even close under general
20  jurisdiction that there's any showing that would satisfy
21  *Daimler* and *Goodyear*.  It's -- the *Reynolds* case is old law,
22  and after *Daimler* and *Goodyear* it's -- the plaintiff has a
23  pretty extensive showing that they have to make, and they just
24  haven't made it.
25      The -- on specific jurisdiction, of course we're now on

Stephen W. Franklin, RMR, CRR, CPE
United States Court Reporter
SFranklinUSDC@aol.com - (561)313-8439

1  the "or relates to" part of specific jurisdiction, and it just
2  seems to me that there's so many direct purposeful availments
3  of the opportunity to do business in California and take
4  advantage of California's laws that directly relate to his
5  employment, that on this record, that the -- there's specific
6  jurisdiction.  You know, he was hired when FTI acquired a
7  California practice group.  While he was a resident of
8  California he agreed to serve as a managing director of the
9  California office.  All of his employment agreements reiterate
10 that California is his principal place of employment.  He
11 maintained an office in California throughout, spent
12 significant time every year.  I don't actually think it's even
13 close on this record as to specific jurisdiction.  You know,
14 there may be other jurisdictions in which specific jurisdiction
15 might apply, but California is certainly one of them.
16      I think the venue argument is not well taken.  I take it,
17 Mr. Hemann, that the argument, you're arguing for venue under
18 (b)(2) only.
19      Right?
20           **MR. HEMANN:**  That's correct, Your Honor.
21           **THE COURT:**  And there's certainly no bright-line rule
22 that it has to be -- venue in contract cases has to be where
23 the contract was negotiated and signed.  It just has to be a
24 substantial part of the events, not the most substantial part.
25 There can be more than one proper venue.  I think it's

1  indisputable that he performed employment agreements both from
2  Wyoming and from an office in San Francisco.  He was hired to
3  work as I said, a managing director at San Francisco, spent
4  significant days working each year here as to the performance
5  of the contract, I think there's plenty to support venue here.
6       You want to talk about that stuff first, and then we can
7  talk about discovery?
8            **MR. HEMANN:**  I don't have anything to add, Your
9  Honor.
10           **THE COURT:**  All right.
11           **MS. BACA:**  Your Honor, is the court reporter able to
12  hear me?  I just want to make sure.
13           **COURT REPORTER:**  Yes, ma'am.
14           **MS. BACA:**  All right.  Thank you, Your Honor.
15       So as we understand the Court's statements, based on the
16  current record the Court is saying the ruling will be whatever
17  the ruling is, and I think we have a sense of what that ruling
18  will be, but it would be without prejudice to being able to
19  actually demonstrate perhaps to the Court that the facts on a
20  more fully developed record would demonstrate otherwise.  And I
21  believe, Your Honor -- and I won't bother to address the venue
22  issue other than to mention to the Court that we would
23  anticipate that we would seek to transfer the matter to the DC
24  court at another point in time, and we'll file that
25  appropriate motion at that appropriate time, just to let the

1  Court know.
2  **THE COURT:**  Okay.  We'll deal with that when it
3  comes, if it comes.
4  **MS. BACA:**  When and if it comes, just to let you
5  know.
6  **THE COURT:**  Okay.
7  **MS. BACA:**  But we hear the Court.  We understand the
8  Court.  We could argue with the Court, but we suspect that
9  we're best to leave things as they are.
10  **THE COURT:**  All right.  So, you know, it's very
11  interesting when sophisticated counsel choose not to argue,
12  there's one of two reasons.  The first reason is, you know,
13  they don't think they're going to get anywhere, and it's not,
14  you know, a fight worth having that argument about.  The second
15  is, oh, good, if he's going to go that way, I want him to mess
16  it up, so I don't want to get in an argument where he
17  corrections it.  I never know with sophisticated counsel which
18  one it is, but I always give the benefit of the doubt, thank
19  you very much.
20     The -- on discovery, you know, I -- Mr. Hemann, I can't
21  believe you, in either of these cases, resisted discovery.  You
22  know, this is something you all should be working -- worked
23  out.
24     And let me just state that from the beginning of this, nor
25  more fights on discovery.  I expect you all to work out your