1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ERIC POER,                                Case No.  24-cv-04725-JSC

8                   Plaintiff,

9           v.                                 **ORDER RE: MOTION TO DISMISS
                                               AND MOTION FOR PRELIMINARY
10   FTI CONSULTING, INC., et al.,             INJUNCTION**

11                  Defendants.                Re: Dkt. Nos. 18, 20

12

13          Eric Poer sues his former employer, FTI Consulting, Inc. and FTI, LLC (together, "FTI"),

14   alleging the noncompete provisions in his employment agreement violate California public policy.

15   Pending before the Court is FTI's motion to dismiss for lack of personal jurisdiction and improper

16   venue, or in the alternative, to transfer the action to the District Court for the District of Columbia.

17   (Dkt. No. 20.)  Also pending before the Court is Mr. Poer's motion for a preliminary injunction.

18   (Dkt. Nos. 18.)  After carefully considering the parties' submissions, and having had the benefit of

19   oral argument on November 14, 2024, the Court DENIES FTI's motion to dismiss and DENIES

20   Mr. Poer's motion for a preliminary injunction.  While the claims have the requisite California

21   nexus for purposes of personal jurisdiction and venue, Mr. Poer has not shown that California's

22   interest in this dispute—involving out-of-state employers and a nonresident employee—is enough

23   to subvert the Maryland choice-of-law provision in the employment agreement.  So, Mr. Poer has

24   not demonstrated likelihood of success on the merits, nor has he demonstrated likelihood of

25   irreparable harm.

26   **I.      FACTS**

27          FTI Consulting, a business advisory firm, is a Maryland corporation with its principal

28

United States District Court
Northern District of California

United States District Court
Northern District of California

office in Maryland and headquarters in DC.  (Dkt. No. 20-1 at 2; Dkt. No. 3 at 9.)[1]  FTI, LLC—a wholly owned subsidiary of FTI Consulting—is a limited liability company organized under the laws of Maryland with headquarters in D.C.  (Dkt. No. 3 at 9; 20-1 at 2.)  Of its 104 offices worldwide, FTI has eight physical offices in California.  (Dkt. No. 18-5 at 2; Dkt. No. 56-26 at 3.)

In March 2011, Mr. Poer began working for FTI as a senior managing director.  (Dkt. No. 3 at 9; Dkt. No. 20-1 at 3.)  The employment agreement he signed listed "San Francisco, CA" as his office location.  (Dkt. No. 18-2 at 20.)  Likewise, his 2013 employment agreement listed "San Francisco, CA" as his office location.  (Dkt. No. 18-3 at 28.)  For the duration of his employment, "FTI represented that [Mr. Poer] was a San Francisco, California based employee, including on its public-facing website and on [his] printed business cards."  (Dkt. No. 18-1 ¶ 16.)

In 2019, Mr. Poer moved to Nevada.  (Dkt. No.  3 at 11.)  He updated his status with FTI to record as a work-from-home employee based in Nevada.  (Dkt. No. 20-1 at 2.)  He also requested that his state jurisdiction for income tax reporting purposes be changed from California to Nevada, effective as of March 4, 2019.  (*Id.* at 3, 8.)  Prior to his move, Mr. Poer had a physical office in California.  (Dkt. No. 18-1 ¶ 16.)  After moving to Nevada, he maintained "key card access to FTI's San Francisco office."  (*Id.* ¶¶ 15-16.)

In March 2020, Mr. Poer signed the employment agreement at issue, which contains noncompete and non-solicitation clauses.  (Dkt. No. 3 at 11.)  Specifically, Section 12 of the agreement provides that Mr. Poer cannot "directly or indirectly[] be employed by (in a similar capacity and rendering similar services as when [he] was employed by [FTI]) . . . or engage in a Competing Business" for twelve months after terminating employment with FTI.  (Dkt. No. 3 at 126-129.)  Section 13 of the contract provides that during this same period, Mr. Poer cannot "solicit business regarding any case or matter upon which [he] worked on behalf of [FTI]," solicit or induce FTI employees to leave FTI, or solicit business from FTI clients he worked with in the two years prior to terminating his employment.  (Dkt. No. 3 at 126.)  The employment agreement lists "Las Vegas, Nevada" as Mr. Poer's office location.  (Dkt. No. 20-1 at 33.)  The agreement, to

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

"be governed by the laws of the State of Maryland," was negotiated between Mr. Poer in Nevada and FTI personnel in Washington, New York, and D.C. (Dkt. No. 3 at 4, 132; Dkt. No. 21-1 at 9.)

In April 2024, Mr. Poer informed FTI he intended to resign from his position. (Dkt. No. 3 at 12.) His last day at FTI was May 23, 2024. (*Id.*) About a week later, Mr. Poer began working for Secretariat Advisors, LLC, a consulting firm. (*Id.*) Secretariat is a Delaware corporation with its principal place of business in Georgia. (Dkt. No. 20-1 at 5; Dkt. No. 57-1 at 15, 17.) Mr. Poer's employment agreement with Secretariat states he "shall perform [his] duties hereunder primarily from Las Vegas, Nevada and shall be affiliated with the Company's office located in San Francisco, California." (Dkt. No. 55-7 at 2.) His term sheet expresses the same. (Dkt. No. 55-11 at 2 ("Working Location : Las Vegas, NV // Website & External : San Francisco, CA").) Mr. Poer's direct report is an employee who also works remotely from Nevada. (Dkt. No. 55-26 at 4.)

In June 2024, FTI sent Mr. Poer a demand letter stating his conduct breached the noncompete provisions of his employment agreement and requested damages totaling approximately $3 million—"the value of [his] total compensation for the past twelve months"—pursuant to Section 19 of the employment agreement.[2] (Dkt. No. 3 at 24; Dkt. No. 20-1 at 58.)

Mr. Poer sued FTI in state court, asserting "California maintains an unambiguous and longstanding public policy against noncompete provisions." (Dkt. No. 3 at 9.) The complaint alleges the employment agreement "violates Business & Professions Code § 16600(a) and § 16600.1(a) by purporting to restrict Mr. Poer's ability to (i) seek employment with firms other than FTI, (ii) solicit business from or perform services for FTI clients, and (iii) speak with FTI employees about leaving FTI's employ." (Dkt. No. 3 at 14.) Mr. Poer further alleges "FTI's use and attempted enforcement of . . . the Noncompete Agreement is an unfair business act or practice within the meaning of the Unfair Competition Law, Bus. & Prof. Code §17200." (Dkt. No. 3 at

---

[2] While Mr. Poer requested the Court seal other documents containing his salary and compensation information, (Dkt. No. 17 at 3), this information was publicly disclosed at Docket No. 20-1 at 58, so sealing is improper. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006) (sealing inappropriate as to information "already publicly available").

United States District Court
Northern District of California

15.)  He seeks a declaration that sections 12, 13, and 19 of his employment agreement are unlawful, unenforceable, and void, and he seeks injunctive relief against any effort to enforce those provisions.  (Dkt. No. 3 at 16.)

## II.    PROCEDURAL HISTORY

FTI removed the action on the basis of diversity jurisdiction.  (Dkt. No. 1.)

Separately, FTI sued Mr. Poer in the District Court for the District of Columbia, alleging Mr. Poer breached his employment agreement and seeking declaratory judgment.  (Dkt. No. 21-1 at 107.)  The District Court for the District of Columbia determined FTI's suit against Mr. Poer was related to an earlier-filed case against Edward Westerman, "another FTI employee [who] . . . resigned from FTI and commenced work with Secretariat."  *See FTI Consulting, Inc. v. Edward Westerman*, No. 1:24-cv-01055 (D.D.C., filed Apr. 12, 2024).  (Dkt. No. 20-1 ¶ 19; Dkt. No. 21-1 at 93-106, 121.)

Pending before the Court are FTI's motion to dismiss and Mr. Poer's motion for a preliminary injunction.  (Dkt. Nos. 18, 20.)

## III.    REQUEST FOR JUDICIAL NOTICE

As an initial matter, FTI asks the Court to take judicial notice of seven documents in considering its motion to dismiss.  (Dkt. No. 21.)  Exhibits A through F relate to the pending actions in the District Court for the District of Columbia involving Mr. Poer and Mr. Westerman.  (Dkt. No. 21-1.)  Exhibit G is a California Court of Appeal decision.  (*Id.*)  The Court grants FTI's request.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (stating courts "may take judicial notice of court filings and other matters of public record").

In addition, the Court grants FTI's request to take judicial notice of Secretariat's filings with the Georgia and California Secretaries of State.  (Dkt. No. 57, Exs. B, C.)  *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) (stating courts "may take judicial notice of a record of a state agency not subject to reasonable dispute").

## IV.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Fed. R. Civ. P. 4(k)(1)

("Serving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,'" the Court's "inquiry centers on whether exercising jurisdiction comports with due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 125); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Due process requires that the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Plaintiff "bears the burden" of establishing personal jurisdiction exists. *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). The Court may consider declarations and other evidence outside the pleadings to determine whether it has personal jurisdiction. *Id.* "[U]ncontroverted allegations in plaintiff's complaint must be taken as true," but courts "may not assume the truth of allegations in a pleading which are controverted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up). Any "factual disputes" must be "resolve[d] . . . in the plaintiff's favor." *Id.*

### A. General Jurisdiction

"A court's exercise of personal jurisdiction over a nonresident defendant may be either general or specific." *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). General jurisdiction requires that the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks omitted). FTI is not incorporated and does not have its principal place of business in California, so FTI is not subject to general jurisdiction in California. (Dkt. No. 20-1 at 2.) Mr. Poer evidently agrees, as he does not refute FTI's assertion general jurisdiction is lacking.

### B.    Specific Jurisdiction

The Ninth Circuit uses a three-prong test to analyze specific jurisdiction.  *Glob. Commodities Trading Grp., Inc.*, 972 F.3d at 1107. "First, '[t]he non-resident defendant must . . . perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  "Second, the claim must arise out of or relate to the defendant's forum-related activities." *Id.* at 1107.  "Finally, the exercise of jurisdiction must be reasonable." *Id.*  The plaintiff "must satisfy the first two prongs of this test," at which point the burden shifts to the defendant to demonstrate the exercise of jurisdiction would be unreasonable.  *Id.*

#### 1.    Purposeful Availment

The purposeful availment test, applied in suits sounding in contract, "asks whether the defendant has performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Teras Cargo Transp. (Am.), LLC v. Cal Dive Int'l (Australia) Pty Ltd.*, No. 15-CV-03566-JSC, 2015 WL 6089276, at *5 (N.D. Cal. Oct. 16, 2015). Here, in light of the eight FTI offices in California, FTI has purposefully availed itself of California for purposes of transacting business.  (Dkt. No. 18-5 at 2; Dkt. No. 56-26 at 3).

#### 2.    Arising Out of or Relating to Defendant's Forum-Related Activities

Mr. Poer's claims for declaratory and injunctive relief arise out of FTI's employment of Mr. Poer.  That employment relationship began in 2011, when FTI bought the San-Francisco-based practice group where Mr. Poer worked and hired Mr. Poer "as a Senior managing Director of its San Francisco, California office."  (Dkt. No. 18-1 ¶ 7.)  In 2011 and 2013, Mr. Poer signed employment agreements with FTI identifying his location of work as San Francisco, California. (*Id.* ¶¶ 7-8).  Both agreements contained restrictive covenants.  (Dkt. No. 18-2 at 9-10;18-3 at 17-18.)  And, although the 2020 agreement at issue lists Mr. Poer's office location as Nevada, Mr. Poer attests that after signing that agreement he worked with California-based clients, managed California-based employees, and maintained key card access to a San Francisco office.  (Dkt. No. 18-1 ¶¶ 10-12).  In addition, "FTI represented that [Mr. Poer] was a San Francisco, California

1    based employee, including on its public-facing website and on [his] printed business cards." (Dkt.

2    No. 18-1 ¶ 16.)  Together, all of these facts are enough to create "an affiliation between

3    [California] and the underlying controversy."  *Bristol-Myers Squibb Co. v. Superior Ct. of*

4    *California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

5        FTI likens the case to *Bristol-Meyers Squibb*, where "the U.S. Supreme Court found no

6    personal jurisdiction existed, despite defendant maintaining multiple offices and hundreds of

7    employees in California." (Dkt. No. 20 at 14 (citing *Bristol-Myers Squibb Co.*, 582 U.S. 255).)

8    But the Court's conclusion on prong two does not flow from the presence of FTI offices and

9    employees in California.  Rather, the Court's conclusion is based on Mr. Poer's employment

10   agreement, which—given Mr. Poer's access to the San Francisco office, his California-based

11   clients and direct reports, and FTI's representation to customers that Mr. Poer was a San-

12   Francisco-based employee—contemplated some performance in California.  While these facts do

13   not establish that Mr. Poer was a California employee, *see infra,* they satisfy the lower bar of

14   indicating Mr. Poer's employment—and hence his employment-related claims—arise out of and

15   relate to FTI's activities in California.  *See Burri L. PA v. Skurla*, 35 F.4th 1207, 1216 (9th Cir.

16   2022) (describing the "arise out of or relate to" inquiry as "less[] exacting").

17       FTI's citations to the contrary are unpersuasive.  In *FTI, LLC et al. v. Superior Court for*

18   *the County of Alameda*, No. A155498 (Cal. Ct. App. Feb. 13, 2019), the California Court of

19   Appeal's brief analysis regarding the propriety of a motion to quash only considered where the

20   contract provisions were negotiated and executed and where efforts to enforce them took place.

21   (Dkt. No. 21-1 at 132.)  The court did not consider where the contract would be performed, a

22   relevant factor under binding Ninth Circuit precedent.  *See Roth v. Garcia Marquez*, 942 F.2d 617,

23   622 (9th Cir. 1991) (finding specific jurisdiction where "the contract concerned a film, most of the

24   work for which would have been performed in California"); *see also Schwarzenegger*, 374 F.3d at

25   802 (purposeful availment includes "performing a contract" in the forum state).  In this vein, *Teras*

26   *Cargo Transport (America), LLC v. Cal Diver International (Australia) PTY LTD* is

27   distinguishable because there the contract "[did] not contemplate performance in th[e] [forum]

28   state."  No. 15-CV-03566-JSC, 2015 WL 6089276, at *7 (N.D. Cal. Oct. 16, 2015).  FTI also cites

cases that have no bearing on this issue because the courts were not analyzing personal

jurisdiction. *See, e.g.*, *Hill v. Workday, Inc.*, No. 23-CV-06558-PHK, 2024 WL 3012802, at *11

(N.D. Cal. June 14, 2024) (considering whether the plaintiff was entitled to protections of the

California Labor Code); *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1120 (N.D. Cal. 2014)

(conducting a choice of law analysis).

### 3.    Reasonableness

The Ninth Circuit employs a multi-factor balancing test to determine the reasonableness of

exercising personal jurisdiction over a non-resident defendant, assessing:

> 1) the extent of the defendant's purposeful interjection into the forum
> state's affairs;
> 2) the burden on the defendant;
> 3) conflicts of law between the forum and defendant's home
> jurisdiction;
> 4) the forum's interest in adjudicating the dispute;
> 5) the most efficient judicial resolution of the dispute;
> 6) the plaintiff's interest in convenient and effective relief; and
> 7) the existence of an alternative forum.

*Roth*, 942 F.2d at 623 (citations omitted).  "No single factor is dispositive." *Silk v. Bond*, 65 F.4th

445, 458 (9th Cir.), *cert. denied,* 144 S. Ct. 91, 217 L. Ed. 2d 21 (2023).

First, as to the extent of FTI's purposeful interjection into California affairs, this factor

weighs in favor of exercising jurisdiction.  FTI has eight offices in California.  (Dkt. No. 18-5 at 2;

¶¶ 11-12.)  When FTI hired Mr. Poer in 2011, he was a California resident working at a San

Francisco office.  (Dkt. No. 18-1 ¶¶ 6-7.)  FTI's citation to *Mitan v. Feeney* to contest this first

factor is unavailing.  497 F. Supp. 2d 1113, 1122 (C.D. Cal. 2007) (noting the "small degree of

interjection" when the defendant's "only contact . . . with California relating to Plaintiff was

initiated by the Redondo Beach police after Plaintiff had been arrested").

The second factor is the burden on the defendant.  As according to FTI its principal place

of business is in Maryland and its corporate headquarters are in D.C., (Dkt. No. 18-1 at 2), some

witnesses will have to travel to California.  But "[t]his burden will not be 'onerous[,]' given FTI's

substantial business in California."  *Westerman v. FTI Consulting, Inc.*, No. 24-CV-04118-JCS,

2024 WL 4314789, at *15 (N.D. Cal. Sept. 25, 2024) (quoting *Tuazon v. R.J. Reynolds Tobacco

Co.*, 433 F.3d 1163, 1175 (9th Cir. 2006)).  So, this factor "just barely" weighs against exercising

jurisdiction.  *See Silk*, 65 F.4th at 458 (when the defendant "has not presented evidence that the inconvenience is so great as to constitute a deprivation of due process, . . . this factor just barely weighs against the exercise of personal jurisdiction") (cleaned up).

As to the third factor, there is minimal conflict with another state's sovereignty.  The case FTI cites reinforces this point.  The court in *Brand v. Menlove Dodge* stated "Utah's sovereignty would not be significantly impaired by allowing the action to proceed in California," explaining "[t]he conflict with the sovereignty of the defendant's state is not a very significant factor in cases involving only U.S. citizens; conflicting policies between states are settled through choice of law analysis, not through loss of jurisdiction."  796 F.2d 1070, 1076 (9th Cir. 1986); *see also Silk*, 65 F.4th at 459 (rejecting the "contention that exercising jurisdiction would conflict with Maryland's 'sovereign prerogatives'").  So, this factor weighs in favor of exercising jurisdiction.

The fourth factor is California's interest in the dispute.  On one hand, Mr. Poer contends California has an interest in adjusting a dispute where Mr. Poer seeks to avail himself of a fundamental California policy.  On the other hand, Mr. Poer is no longer a California resident.  *See Silk*, 65 F.4th at 459 ("[A]lthough California has an interest in providing an effective means of redress for its residents, [the plaintiff] is no longer a California resident").  In general, the Ninth Circuit has held the fourth factor is "a toss-up" when the dispute involves a contract, so this factor is neutral.  *Roth*, 942 F.2d at 624.

The fifth factor—efficient judicial resolution of the dispute—"is no longer weighed heavily given the modern advances in communication and transportation."  *Silk*, 65 F.4th at 459.  FTI identified three witnesses who reside and work in D.C.  (Dkt. No. 20-1 ¶ 22.)  Mr. Poer, in contrast, has not identified any evidence or witnesses located in California.  So, while this factor weighs against exercising jurisdiction, it is entitled to little weight.

The sixth factor is the plaintiff's interest in a convenient forum.  This factor weighs in favor of exercising jurisdiction, as California is more convenient for Mr. Poer than D.C., FTI's proposed forum.  *See Silk*, 65 F.4th at 459 ("California also serves [the plaintiff's] interest in convenient and effective relief: Even though [the plaintiff] now lives in Nevada, California is a more convenient forum for him than Maryland").

1    The seventh factor—the existence of an alternative forum—is currently unknown.  While

2  FTI asserts D.C. is an alternative forum, Mr. Poer's motion to dismiss the D.C. action for lack of

3  personal jurisdiction is pending.  *See FTI Consulting v. Poer*, No. 1:24-cv-02035-CJN (D.D.C.).

4    Weighing the factors, the Court concludes FTI has not met its burden of establishing

5  jurisdiction is unreasonable.  FTI purposefully interjected itself into California, a state that

6  provides convenient relief for Mr. Poer.  As this case involves U.S. rather than foreign citizens, the

7  concern about impairing another state's sovereignty is minimal.  And while FTI asserts D.C. is a

8  more convenient forum for litigating this dispute, it has not established California—where it has

9  offices—is so inconvenient so as to render jurisdiction unreasonable.

10    So, the Court DENIES FTI's motion to dismiss for lack of personal jurisdiction.

11  **V.    MOTION TO DISMISS FOR IMPROPER VENUE**

12    FTI contends venue in the Northern District of California is improper.  Under 28 U.S.C. §

13  1391(b), "[a] civil action may be brough in . . . a judicial district in which any defendant resides."

14  For venue purposes, "an entity . . . shall be deemed to reside, if a defendant, in any judicial district

15  in which such defendant is subject to the court's personal jurisdiction with respect to the civil

16  action in question."  *Id.* § 1391(c)(2).  In California, "which has more than one judicial district,"

17  the "corporation shall be deemed to reside in any district in that State within which its contacts

18  would be sufficient to subject it to personal jurisdiction if that district were a separate State."  *Id.* §

19  1391(d).  "Accordingly, the issue is whether, treating the [Northern] District of California as a

20  separate state, [FTI] has sufficient contacts to subject it to personal jurisdiction."  *See Affliction*

21  *Holdings, LLC v. Teespring, Inc.*, No. 8:19-cv-01970-JLS-ADS, 2020 WL 2770195, at *3 (C.D.

22  Cal. Feb. 18, 2020).

23    Venue is proper because FTI has sufficient contacts with the hypothetical state of the

24  Northern District of California.  The basis for the Court's specific jurisdiction finding primarily

25  involves activities in San Francisco.  As described above, Mr. Poer maintained key card access to

26  a San Francisco office, and "FTI represented that [Mr. Poer] was a San Francisco, California based

27  employee."  (Dkt. No. 18-1 ¶ 16.)  Tellingly, FTI does not address 28 U.S.C. § 1391(c) or contest

28  Mr. Poer's assertion that FTI resides in the Northern District of California because it is subject to

United States District Court
Northern District of California

1    personal jurisdiction here.

2        So, the Court DENIES FTI's motion to dismiss the case for improper venue.

3    **VI.    MOTION TO TRANSFER VENUE**

4        In the alternative, FTI asks the Court to transfer the case to the U.S. District Court for the

5    District of Columbia.  "For the convenience of parties and witnesses, in the interest of justice, a

6    district court may transfer any civil action to any other district or division where it might have

7    been brought or to any district or division to which all parties have consented."  28 U.S.C. §

8    1404(a).  Section 1404(a) exists to "prevent the waste of time, energy, and money and to protect

9    litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v.*

10   *Barrack*, 376 U.S. 612, 616 (1964) (cleaned up).  District courts decide motions for 1404(a)

11   transfer based on an individualized, case-by-case consideration of convenience and fairness.

12   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  The non-exclusive factors a

13   district court may consider in deciding whether a transfer is in the interest of justice include:

14           (1) the location where the relevant agreements were negotiated and
             executed, (2) the state that is most familiar with the governing law,
15           (3) the plaintiff's choice of forum, (4) the respective parties'
             contacts with the forum, (5) the contacts relating to the plaintiff's
16           cause of action in the chosen forum, (6) the differences in the costs
             of litigation in the two forums, (7) the availability of compulsory
17           process to compel attendance of unwilling non-party witnesses, and
             (8) the ease of access to sources of proof.
18

19   *Jones*, 211 F.3d at 498–99.  FTI, as the movant, bears the burden to demonstrate jurisdiction and

20   proper venue would exist in D.C. and that the balance of factors favors transfer.  *Commodity*

21   *Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

22       FTI has not met its burden.  As an initial matter, there is a serious question as to whether

23   the District of Columbia has personal jurisdiction.  Mr. Poer's motion to dismiss for lack of

24   personal jurisdiction is pending before the District Court for the District of Columbia.

25       Furthermore, FTI has not established transferring the case to the District of Columbia is in

26   the interest of justice.  While FTI contends it "has identified numerous witnesses and evidence

27   located in Washington, D.C.," (Dkt. No. 50 at 19), FTI never specifies what the evidence consists

28   of.  As for witnesses, FTI identifies three who reside in D.C, (Dkt. No. 20-1 ¶ 22), which alone is

United States District Court
Northern District of California

not enough to tip the scale on convenience.  And FTI's assertion that California is inconvenient is undermined by FTI's eight offices in California.

Meanwhile, California is Mr. Poer's chosen forum.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").  Mr. Poer was a California-based employee when FTI hired him.  The case turns on a choice-of-law analysis, and it makes little sense to transfer the case so the District of Columbia can determine whether California law governs.

In sum, in light of serious question as to whether the District of Columbia has personal jurisdiction of Mr. Poer, the weight entitled to the plaintiff's choice of forum, and the questions of California law this case presents, the Court in its discretion DENIES FTI's motion to transfer venue.

## VII.    MOTION FOR PRELIMINARY INJUNCTION

"Mr. Poer seeks a preliminary injunction to prevent enforcement of the[] unlawful covenants so he may be permitted to continue in his line of work without the chilling effect of FTI's ongoing and significant threats of litigation and damages."  (Dkt. No. 18 at 6.)

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 911 (9th Cir. 2021) (emphasis in original).  To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships  . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied."  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation omitted).  The "[l]ikelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors, in the

United States District Court
Northern District of California

12

absence of serious questions going to the merits." *Id.* (cleaned up).

### A.    Success on the Merits

Mr. Poer's 2020 employment agreement with FTI has a Maryland choice-of-law provision. (Dkt. No. 3 at 4, 132.)  Mr. Poer contends the provision is void and unenforceable because California law prohibits enforcement of noncompete and non-solicitation agreements.

California courts employ a multistep analysis to determine the enforceability of contractual choice-of-law provisions.[3]  *See Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 100 (2019) (citing *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 466, (1992)).  First, the court determines "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd*, 3 Cal. 4th at 466.  "If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law." *Id.*  Here, the first test is met because FTI Consulting, Inc. is incorporated in Maryland, and FTI, LLC is organized under the laws of Maryland.  (Dkt. 20-1 ¶¶ 2-3.)  So, Maryland—the chosen state—has a "substantial relationship" to FTI, Mr. Poer, and his employment agreement.  *See Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 899 (1998)  ("[T]he mere fact that one of the parties to the contract is incorporated in the chosen state is sufficient to support a finding of 'substantial relationship.'"); *see also BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*, 364 F. Supp. 3d 1115, 1119 (E.D. Cal. 2019) ("California courts have routinely found that the required substantial relationship exists where one of the parties is incorporated or maintains a principal place of business in the chosen state.").

The Court thus proceeds to the second step in the choice-of-law inquiry: "determin[ing] whether the chosen state's law is contrary to a *fundamental* policy of California."  *Nedlloyd*, 3 Cal. 4th at 466.  The second step is met, too.  California and Maryland have "diametrically opposed laws regarding the enforceability of . . . noncompetition clause[s]."  *Application Grp.*, 61 Cal.

---

[3] The choice-of-law analysis is governed by California law.  *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 65 (2013) ("A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits.").

United States District Court
Northern District of California

App. 4th at 900.  Whereas "California law renders void" noncompetition provisions, "Maryland law permits them so long as they are reasonable in scope and duration."  *Id.*; *compare* Cal. Bus. & Prof. Code § 16600 (a "contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void") *with Ruhl v. F. A. Bartlett Tree Expert Co.*, 245 Md. 118, 123–24 (1967) ("The general rule in Maryland [is] that restrictive covenants in a contract of employment . . . will be sustained if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public.") (quotation marks omitted).  Further, case law makes clear that section 16600 reflects "a *fundamental* policy of California," as required by *Nedlloyd*.  *See Application Grp.,* 61 Cal. App. 4th at 900 (concluding "section 16600 reflects a strong public policy of the State of California") (quotation marks omitted); *Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 621 (E.D. Cal. 2017) (collecting cases indicating the "trend among California courts of finding that § 16600 represents a fundamental public policy interest in California").

The Court thus proceeds to the final step in the choice-of-law analysis, which is to determine "whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'"  *Nedlloyd*, 3 Cal. 4th at 466 (citing Rest., § 187, subd. (2)).  If so, "the choice of law shall not be enforced, for the obvious reason that in such circumstance [courts] will decline to enforce a law contrary to this state's fundamental policy."  *Id.* Relying on *Application Group*, Mr. Poer argues California has a materially greater interest than Maryland in whether the noncompete is enforceable.

In *Application Group*, the Court of Appeal weighed the interests of California and Maryland to determine the enforceability of a noncompete provision.  61 Cal. App. 4th at 900.  There, the employer seeking to enforce the noncompete, The Hunter Group, Inc. ("Hunter"), was incorporated and headquartered in Maryland.  *Id.* at 886.  The employee, Ms. Pike, was a resident of Maryland and worked at Hunter's Maryland office.  *Id.* at 887.  Ms. Pike was recruited by Application Group, Inc. ("AGI"), a California corporation.  *Id.* at 886.  Hunter sued Ms. Pike, alleging she breached the covenant not to compete in her employment agreement, which had a

1  Maryland choice-of-law provision.  *Id.* at 886.  Ms. Pike and AGI filed a separate suit for

2  declaratory relief, arguing "section 16600, and not Maryland law, applied to [the] covenant not to

3  compete and AGI's recruitment of Pike."  *Id.* at 888.

4          At the third step of the choice-of-law analysis, the court concluded California had a

5  materially greater interest than Maryland in the application of its law to the parties' dispute.  In so

6  holding, the court focused on California's interest in protecting California employers who recruit

7  employees to perform services in California.  *Id.* at 900-01 ("California has a strong interest in

8  protecting the freedom of movement of persons whom California-based employers . . . wish to

9  employ to provide services in California").  Because "California employers … have a strong and

10  legitimate interest in having broad freedom to choose from a much larger, indeed a 'national,'

11  applicant pool," the state of California "has a correlative interest in protecting its employers and

12  their employees from anti-competitive conduct by out-of-state employers."  *Id.*

13          *Application Group* does not support Mr. Poer's insistence California has a strong interest

14  in protecting Secretariat.  Whereas AGI was incorporated in California and had its headquarters in

15  California, *id.* at 886, Secretariat is a Delaware corporation with its principal place of business in

16  Georgia.  (Dkt. No. 20-1 at 5.)  Whereas AGI's employment agreements were governed by

17  California law, *Application Grp.,* 61 Cal. App. 4th at 886, Secretariat's employment agreements

18  include Delaware and Georgia choice-of-law provisions.  (Dkt. No. 55-5 at 7; Dkt. No. 55-7 at 13;

19  Dkt. No. 55-8 at 6.)  And whereas AGI employees were not subject to "a covenant forbidding

20  employment with its competitors," *Application Grp.,* 61 Cal. App. 4th at 886, Secretariat's

21  agreement with Mr. Poer contains a noncompete provision restricting him from working for a

22  competing business for twelve months after his employment with Secretariat, including at a

23  business in California.  (Dkt. No. 55-5 at 5-6.)  California has little to no interest in protecting an

24  out-of-state employer seeking to benefit from California's protection against anti-competitive

25  conduct while itself engaging in anti-competitive conduct that could harm California employers

26  and employees.  In fact, Secretariat is enacting the very harm the *Application Group* court sought

27  to avoid: "an out-of-state employer . . . limit[ing] employment and business opportunities in

28  California."  *Application Grp.,* 61 Cal. App. 4th at 902.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Mr. Poer contends an employer that is not headquartered or incorporated in California can

2    nevertheless be a California-based employer for purposes of *Application Group*.  But in the case

3    he cites to support this assertion, the company seeking to invalidate the noncompete provision was

4    "incorporated and ha[d] a regular and established place of business in California."  *Power*

5    *Integrations, Inc. v. De Lar*, No. 20-CV-410-MMA (MSB), 2020 WL 1467406, at *11 (S.D. Cal.

6    Mar. 26, 2020) (quotation marks omitted).  So, Mr. Poer's claim the *Power Integrations* court did

7    not "consider[] the employer's . . . place of incorporation" is inaccurate.[4]  (Dkt. No. 65 at 10).  In

8    any event, as described above, California has minimal interest in protecting Secretariat from the

9    very anti-competitive conduct it engages in.

10    Nor does California have an interest in protecting Mr. Poer.  In *Application Group*, it was

11    significant to the court that Ms. Pike would be employed in California.  While Ms. Pike did not

12    reside in California and had never visited California, "the goal of the solicitation [was]

13    employment in California."  *Id.* at 904 (quotation marks omitted).  That is not the case here.

14    Although Secretariat publicly holds Mr. Poer out as a San Francisco-based employee, his

15    employment agreement and term sheet make clear the parties' intent that Mr. Poer work from and

16    "perform [his] duties . . . primarily from Las Vegas, Nevada."  (Dkt. No. 55-7 at 2; Dkt. No. 55-11

17    at 2; Dkt. No. 55-12 (Mr. Poer's notes on term sheet state "Public Website to be San Francisco,

18    CA office location but employment agreement should be 'work from home', Las Vegas, NV.").)

19    There is no record of Mr. Poer having visited Secretariat's California office, although he went to

20    Secretariat's office in Atlanta for recruiting and onboarding.  (Dkt. No. 55-20.)  And Mr. Poer's

21    only direct report also resides in Nevada.  (Dkt. No. 55-26 at 4.)  So, Mr. Poer has not shown he

22    was or is a California employee while at Secretariat.  This conclusion is underscored by the

23    presence of a noncompete provision in his employment agreement with Secretariat—the very

24    provision Mr. Poer asserts is antithetical to California public policy.

25    Nor was Mr. Poer a California employee at FTI when he signed the 2020 employment

26

27    [4] At oral argument, Mr. Poer pivoted from arguing the *Power Integrations* court did not consider
the employer's place of incorporation to arguing the employer was in fact incorporated outside

28    California.  As *Power Integrations* is not binding, the Court declines to investigate whether the
district court incorrectly stated the employer's state of incorporation.

agreement. By that time, Mr. Poer had moved to Nevada. (Dkt. No. 3 at 11.) Mr. Poer need not have physically resided in California to be a California employee. *See Application Grp*, 61 Cal. App. 4th at 905. But his connections to California appear superficial: a website affiliation and keycard access to a San Francisco office. Meanwhile, his 2020 employment agreement listed "Las Vegas, Nevada" as his office location. (Dkt. No. 20-1 at 33.) His tax status reflected his Nevada residence. (Dkt. No. 20-1 at 2-3, 8.) And Mr. Poer's billing records from January 1, 2020 to May 23, 2024 reveal minimal time spent in California. He "logged over ninety-five percent of his overall hours outside of California," with "the vast majority . . . recorded in Nevada." (Dkt. No. 20-1 at 3.) Specifically, Mr. Poer worked in California a total of 11 days in 2020, 1 day in 2021, 9 days in 2022, 8 days in 2023, and 10 days in 2024. (Dkt. Nos. 55-21 (2020); 55-23 (2021); 55-25 (2022); 56-26 ¶ 11 (2023 and 2024).) On these undisputed facts, it would be unreasonable to conclude Mr. Poer was a California employee.

Mr. Poer emphasizes he "performed substantial work for California-based clients." [5] (Dkt. No. 65 at 11; Dkt. No. 18-1 ¶ 10 ("estimate[ing] that approximately 80% to 90% of [Mr. Poer's] work was with California-based FTI clients").) But were this enough, any employee with California-based customers could seek protection under section 16600. Mr. Poer does not identify a case where a non-California resident whose office was not in California and who worked for an out-of-state employer could seek protection under section 16600 on the basis of work with California clients. The cases Mr. Poer cites indicate more is required to justify the application of California law. *See, e.g.*, *Stryker*, 231 F. Supp. 3d at 621 (applying California law when "nearly all the events giving rise to plaintiff's causes of action occurred in California"; the employee "ostensibly resided in California during the entire time period relevant to this action"; the employee "worked closely" with long-term customers in California; and the competitor the employee began working for was a California corporation); *Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1025 (N.D. Cal. 2016) (concluding California had a materially greater interest in a

---

[5] FTI filed objections to evidence Mr. Poer included with his reply. (Dkt. No. 67.) FTI primarily objects to documents referencing the location of Mr. Poer's clients. (*Id.* at 2-4.) Because the Court did not rely on this evidence, the Court need not address FTI's objections.

1    dispute "between (primarily) California employees, their current California employer, and their

2    former California employer").

3         Mr. Poer's citation to *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) is

4    unavailing.  True, "section 16600 evinces a settled legislative policy in favor of open competition

5    and employee mobility." *Edwards,* 44 Cal. 4th at 946.  But as the *Edwards* court explained,

6    section 16600 "protects *Californians* and ensures that every citizen shall retain the right to pursue

7    any lawful employment and enterprise of their choice." *Id.*  (2008) (emphasis added) (quotation

8    marks omitted).  It is undisputed Mr. Poer is not a California citizen, and as explained above, he

9    was not and is not a California employee; so, he is not a Californian entitled to the protections of

10   section 16600.

11        Mr. Poer also relies on Section 16600.5, which provides an employer shall not attempt to

12   enforce a void noncompete "regardless of whether the contract was signed and the employment

13   was maintained outside of California."  Cal. Bus. & Prof. Code § 16600.5(b).  But implicit in the

14   provision is that the employer who cannot enforce the noncompete is a California-based employer.

15   To interpret the provision otherwise would mean section 16600.5 protects a non-California citizen

16   working for a non-California-based employer at an office outside California. There is no

17   indication the California legislature intended such a result, let alone that it has the authority to

18   require such a result for non-California employers.

19        While California has at best minimal interest in Mr. Poer's position, Maryland's interest is

20   substantial.  FTI Consulting, Inc. is incorporated in Maryland, and FTI, LLC is organized under

21   the laws of Maryland.  (Dkt. 20-1 ¶¶ 2-3.)  *See Application Grp.*, 61 Cal. App. 4th at 899 (finding

22   a "substantial relationship" when "one of the parties to the contract is incorporated in the chosen

23   state").  Both FTI and Mr. Poer agreed to be bound by Maryland's laws.  "Moreover, [Maryland]

24   has an interest in enforcing the contract rights of its citizens and ensuring uniform interpretation of

25   similar agreements that companies like [FTI] have with their employees." *See Stryker*, 231 F.

26   Supp. 3d at 621.

27        Because Maryland has a materially greater interest than California in this dispute, Mr. Poer

28   is unlikely to succeed on the merits of the choice-of-law analysis.

United States District Court
Northern District of California

18

**B.      Irreparable Harm**

Mr. Poer asserts his "inability to freely work in his chose profession" constitutes irreparable harm.  (Dkt. No. 18 at 17.)  Specifically, Mr. Poer contends due to FTI's threat of litigation, he has "been unable to fully resume work or reach out to several former clients" and was "unable to prepare appropriately for [his] depositions, prepare [his] expert reports, and even prepare for a trial in June 2024."  (Dkt. No. 18-1 ¶ 29.)

As Mr. Poer notes, the Ninth Circuit has found irreparable injury when the plaintiff was unable to work in his chosen profession.  In *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *1 (9th Cir. May 15, 2023), for example, the plaintiffs were denied religious exceptions to their employer's COVID-19 vaccination requirement.  The Ninth Circuit concluded the resulting "loss of employment" constituted irreparable harm.  *Id.* at *2.  The employer essentially gave plaintiffs "a Hobson's choice: lose your faith and keep your job, or keep your faith and lose your job."  *Id.* at *2.

Likewise, in *Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1156 (9th Cir. 2011), the court found irreparable harm when the defendant's conduct precluded the plaintiff from pursuing her chosen profession.  The *Enyart* plaintiff's requested accommodations for the bar exam and the Multistate Professional Responsibility Exam were denied.  The Ninth Circuit affirmed the issuance of a preliminary injunction requiring the defendant to allow the plaintiff, who was legally blind, to take the exams using assistive software.  *Id.* at 1166.  The court found "[the plaintiff] demonstrated irreparable harm in the form of the loss of opportunity to pursue her chosen profession."  *Id.*  "If she fails the Bar Exam or scores too low on the MPRE to qualify for admission, [the plaintiff] cannot be licensed to practice law in California"—a conclusion which was "not speculative, but rather [was] prescribed by California law."  *Id.*

Unlike the plaintiffs in *Keene* and *Enyart*, Mr. Poer does not attest he is facing the prospect of losing his job.  Nor could he, given that Secretariat hired Mr. Poer with knowledge of his noncompete with FTI and Mr. Poer sought to account for that noncompete in his terms of employment with Secretariat.  (Dkt. No. 55-6; Dkt. No. 55-12 .)  Mr. Poer attests the noncompete prevents him from "continu[ing] [his] work unrestricted and without seeking seeking . . .

dispensations from FTI," (Dkt. No. 18-1 ¶ 29), but he does not cite a case where such restrictions alone constituted irreparable injury.

Mr. Poer refers to a case where the plaintiff's reassignment to a different job caused the plaintiff emotional and physical injury, which constituted irreparable injury. *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 709 (9th Cir. 1988). The plaintiff was reassigned from a teaching position, where "[h]is closeness to his students and his participation in their lives [was] a source of tremendous personal satisfaction," to an administrative position that "involve[d] no student contact[] and [did] not utilize his skills, training, or experience." *Id.* But this is again distinguishable from the present case. Mr. Poer is pursuing his chosen profession—just with limitations and restrictions he accounted for when he took the job.

Mr. Poer's citations to district court cases are also unavailing because the cases involve facts not present here. In *Eller v. Automatic Data Processing, Inc.*, the plaintiff attested the noncompete "threaten[ed] [her] livelihood and ability to meet [her] family's needs," which was significant to the court. No. 23-CV-0943-BAS-AHG, 2023 WL 3829723, at *8 (S.D. Cal. June 5, 2023). Also significant was the plaintiff's declaration that her underperformance resulting from the noncompete was "damaging [her] reputation, credibility, and goodwill." *Id.*; *see also Robinson v. Jardine Ins. Brokers Int'l Ltd.*, 856 F. Supp. 554, 559 & n.19 (N.D. Cal. 1994) (finding irreparable injury where the plaintiff established the noncompete would "cause[] loss or damage to . . . client relationships" when the plaintiff "testified that at least one client ha[d] already requested to transfer business to Plaintiff's new firm"). Mr. Poer's declaration does not state the noncompete threatens his or his family's livelihood, and it does not state the noncompete has caused damage to his reputation.

Because Mr. Poer has failed to demonstrate likelihood of success on the merits, and because he has not made a clear showing of irreparable injury, the Court need not address the remaining preliminary injunction factors and DENIES Mr. Poer's motion for a preliminary injunction.

## CONCLUSION

For the reasons stated above, FTI's motion to dismiss is DENIED and Mr. Poer's motion

for a preliminary injunction is DENIED.  The Court sets a case management conference for January 9, 2025 at 1:30 p.m. via videoconference.  A joint case management statement is due January 2, 2025.

This Order disposes of Docket Nos. 18 and 20.


**IT IS SO ORDERED.**

Dated: November 20, 2024

JACQUELINE SCOTT CORLEY
United States District Judge